Gregory B. Smith (USB #6657)
GREG SMITH AND ASSOCIATES
111 East 5600 South, Suite 105
Murray, UT  84107
Telephone: (801) 641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff, Greg Gunn*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GREG GUNN, | **COMPLAINT** |
| Plaintiff, | (Jury Demand Requested) |
| vs. | |
| COFFEE 911, LLC d.b.a. BAD ASS COFFEE COMPANY; and MICHAEL HENNESSY, an individual; | |
| Defendants. | |

PLAINTIFF, Greg Gunn, by and through his attorney, Gregory B. Smith of GREG SMITH AND ASSOCIATES, files this Complaint against Defendants as follows:

### I.   PARTIES

1. Greg Gunn ("Plaintiff") is an individual citizen who resides in Tooele County, State of Utah.

2. Bad Ass Coffee Company is a d.b.a. of Coffee 911, LLC, a domestic Limited Liability Company registered to do business in Utah (Entity Number: 8555468-0160; Company Type: LLC - Domestic; Address/Registered Agent

1

Address: 1004 Tuscany View Road, #1904, Midvale, UT, 84047; Registered Agent: Michael Richard Hennessy).

3. Plaintiff is no longer employed for Defendant.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction under the United States Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111.

5. Venue is proper in this Court (pursuant to 28 U.S.C. § 1391) because the activities took place in Salt Lake County, State of Utah.

## III. STATEMENT OF FACTS

6. Michael Hennessy ("Hennessy") is the sole proprietor of Coffee 911, LLC d.b.a. Bad Ass Coffee Company, and directly supervised Plaintiff's work at all times while Plaintiff was employed for Defendants.

7. At all times while Plaintiff worked for Defendants, Coffee 911, LLC d.b.a. Bad Ass Coffee Company was a covered enterprise for purposes of the United States Fair Labor Standards Act (FLSA).

8. Plaintiff started working for the business in about 1998.

9. Plaintiff was working as a manager before Hennessy acquired the business in about April of 2014.

10. When the new manager was relieved of her managerial duties (in September of 2015), Hennessy told Plaintiff that Hennessy wanted him (Plaintiff) to reassume the role of manager.

11. Plaintiff's pay increased from about $9 per hour to $14 per hour.

12. Plaintiff also earned tips.

13. Plaintiff was paid bi-monthly (on the 1st and 15th of each month) by direct deposit.

14. Plaintiff felt forced to terminate his employment for Defendants on or about June 18, 2018 after (a) Plaintiff lost his peripheral vision on the job due to work-related stress, (b) Hennessy's refusal to report the incident to Worker's Compensation, and (c) Hennessy's refusal to pay Plaintiff for hours spent off-the-clock laundering towels for Defendants – in violation of the FLSA.

15. Hennessy had outsourced the task of laundering the towels to a third-party before, and had stated it was "too expensive."

16. The previous manager, Amanda, laundered the towels for Defendants.

17. From about October 1, 2015 to January 1, 2017, Plaintiff worked off-the-clock from his home washing and drying towels, and Hennessy was apprised of such:

    a. the used and dirty towels started to stack up.

    b. Plaintiff was aware it was a health code violation to not have sanitary and clean towels.

    c. Hennessy knew the towels needed to be laundered and that he was not paying for a third-party laundering service.

18. Plaintiff estimates he worked *at least* 515 hours off-the-clock for Defendants laundering towels at his own expense:

    a. From October 1, 2015 to about December 31, 2016, Plaintiff laundered towels for Defendants an average of twice per week, for a total of about five (5) hours per week.

    b. In other words, over about 65 weeks (2015-2016), Plaintiff spent about 325 hours laundering towels for Defendants off-the-clock, for which he received absolutely no compensation, and he should be compensated for such at the hourly rate he was being paid at that time.

    c. Toward the end of 2016, Plaintiff purchased a larger dryer.

    d. From January 1, 2017 to about June 13, 2018, Plaintiff laundered towels for Defendants at least once per week.

    e. In other words, over about 76 weeks (2017-2018), Plaintiff spent at least 190 hours laundering towels for Defendants off-the-clock, for which he received absolutely no compensation.

    f. This does not include utility costs or the cost of laundry detergent for which Plaintiff should also be paid (for now that is estimated at $250).

19. Further, Plaintiff often worked at least forty (40) hours per week for Defendant *excluding* any time spent laundering towels off-the-clock.

20. Therefore, the time Plaintiff spent laundering towels at home were overtime hours – for which he was not paid.

21. **Unjust Enrichment.** *At a minimum*, Hennessy was constructively aware (a) that Plaintiff was providing this service for the benefit of Hennessy's business, and (b) that Plaintiff was personally absorbing the cost, as Hennessy was not compensating Plaintiff (neither for his time, nor for the cost of supplies).

22. On or about June 18, 2018 in a text message to Hennessy, Plaintiff stated he needed to be compensated for laundering towels for the shop.

23. Hennessy asked Plaintiff what compensation he thought was fair.

24. Plaintiff understated the actual amount of time spent laundering the towels off-the-clock would be fair.

25. Plaintiff proposed Hennessy compensate him for about 380 hours.

26. Hennessy's response was that it wasn't fair for Plaintiff to ask to be paid for laundering towels for the business.

27. During that conversation, Plaintiff notified Hennessy that he quit, and Hennessy accepted Plaintiff's resignation (this was a constructive discharge that was triggered by Defendants' refusal to pay Plaintiff pursuant to the FLSA).

28. **Illegal Retaliation.** On or about July 2, 2018, given Hennessy's response to Plaintiff's raising a pay issue, Plaintiff told Hennessy that he would have to file a claim with the Department of Labor.

29. Hennessy then threatened to file a claim alleging Plaintiff stole thousands of dollars from Hennessy's establishment by giving away free drinks.

    a. In other words, Defendants sought to bully Plaintiff, so that he would not seek to enforce his rights under the FLSA.

30. Plaintiff retained Gregory B. Smith as Counsel on July 3, 2018.

31. Counsel contacted Hennessy via email that same day.

32. Two days later, on July 5th (and 6th), Hennessy emailed Plaintiff an invoice for $240 to "key all locks as required due to failure to return key after resignation as agreed," plus the cost of materials ("merchandise") and sales tax.

    a. This was done with a retaliatory motive, and was designed to intimidate Plaintiff, so that he would not assert his FLSA rights.

33. The invoice did not come from a locksmith or locksmith company, but from "Bad Ass Coffee Salt Lake City."

34. To Plaintiff's knowledge and belief, no employee before has been billed for this.

35. With an interchangeable lock system on the doors, and keys and tools already in his possession, Hennessy has the ability to change the locks himself.

36. In other words, in response to Plaintiff reporting a pay issue and hiring an attorney, Hennessy (a) threatened to file a claim of theft against Plaintiff and (b) billed Plaintiff for keying costs Hennessy did not actually incur.

37. The FLSA prohibits employers from retaliating against an employee who has asserted their FLSA rights.

38. Specifically, an employer may not discriminate against an employee who has (1) filed a complaint or instituted a proceeding under or related to FLSA; (2) testified or is about to testify in an FLSA proceeding; or (3) served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3).

39. Because section 15(a)(3) prohibits "any person" from retaliating against "any employee", the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA.

40. In other words, Hennessy's act of billing Plaintiff for a cost of services that he did not incur is an act of retaliation under the FLSA.

41. **Improper time reductions and manipulation of time records.** On at least one (1) occasion (around April 21, 2018), Hennessy manipulated the time Plaintiff had worked to avoid going over 80 hours for the pay period.

42. Hennessy asked Plaintiff if he would work extra hours, and Plaintiff did so (ie. when an employee named Madeline quit).

43. In other words, Hennessy has been aware that Plaintiff was working more than 40 hours for the benefit of the business, and he allowed it.

44. **Lost wages.** As a direct result of Hennessy's refusal to properly pay Plaintiff, Plaintiff has lost wages.

45. While employed for Defendants, Plaintiff was making, on average, about $830 per paycheck plus between $400 and $600 in tips (between $1,230 to $1,430 per paycheck).

46. Plaintiff has taken another job where, on average, he makes about $1,126 bi-monthly.

47. As a result of the difference in income, damages are ongoing (bank fees, including overdraft fees; late payment charges; etc.)

48. Plaintiff and his wife have a mortgage and two young children, ages 5 and 2.

49. **Pain and Suffering.** Defendants' actions and retaliatory actions have brought on an extreme amount of stress for Plaintiff: including (but not limited to) loss of appetite, loss of enjoyment of life, loss of sleep, loss of consortium, fear of eviction for inability to pay his mortgage, fear of the inability to pay his bills, and damage to his credit.

50. Plaintiff has suffered an extreme amount of stress that has negatively impacted his health, due to a high turnover of long-standing employees after Hennessy acquired the business and assumed control of scheduling:

    a. On or about November 17, 2017, Hennessy was in Jamaica.

    b. Hennessy's hire(s) failed to show up for work for about three (3) days.

    c. Plaintiff was left alone to do the work of three (3) people at a coffee shop in the morning.

    d. Plaintiff lost peripheral vision in both eyes and got a headache that essentially never went away.

    e. Plaintiff underwent extensive treatment that included medication with negative side-effects.

    f. Hennessy made light of Plaintiff's condition and never did report the incident to Worker's Compensation.

### IV.   CAUSES OF ACTION

1. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above.
2. Plaintiff brings this action pursuant to any cause of action that the facts, whether now known or unknown, will support.
3. He also brings it pursuant to the Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111 to recover unpaid wages, overtime, wage differential, liquidated damages in an equal amount, attorney's fees, the cost of this litigation, and whatever else the Court awards, according to what is just and fair.
4. The anti-retaliation provision is a critical element in the enforcement scheme of the FLSA. See e.g., *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960). Under the provision, found at Section 15(a)(3) of the FLSA, it is unlawful for any person...to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA], or has testified or is about to testify in any such proceeding... 29 U.S.C. § 215(a)(3).
5. "The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Lambert v. Ackerly*, 180 F.3d 997, 1004 (9th Cir. 1999). "Unchecked retaliation, no matter what form, subverts the purpose of the

FLSA." *Mullins v. City of New York*, 626 F.3d 47, 55 (2nd Cir. 2010); *see also Centeno-Burney v. Perry*, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003).

6. In order for a Plaintiff to establish a prima facie case of retaliation under the FLSA, he must show that: "(1) he engaged in activity protected by the FLSA; (2) defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action."

7. Here, Plaintiff meets all three required elements to make a *prima facie* showing of retaliation.

8. Plaintiff engaged in activity protected by the FLSA in that he made a complaint to Hennessy and Defendants regarding unpaid wages and overtime wages. On or about July 3, 2018, Plaintiff also retained legal counsel when Defendants refused to properly pay him.

9. Two (2) days later, on or about July 5th (and again on the 6th), Defendants took an adverse employment action against Plaintiff and billed him for a service cost that Defendants did not actually incur to key all locks.

10. There was a causal link between the protected activity and the adverse action.

11. To Plaintiff's knowledge and belief, no employee before has been billed for this.

11

12. With an interchangeable lock system on the doors, and keys and tools already in his possession, Hennessy has the ability to change the locks himself.

## V. JURY DEMAND

Plaintiff demands a jury trial.

## VI.   PRAYER FOR RELIEF

Plaintiff respectfully asks the Court to order that Defendants pay all compensatory, contractual, liquidated, punitive, and statutory damages as a result of Defendant's unlawful conduct (consistent with what has been pleaded above), plus attorney fees and costs of this action, pre- and post-judgment interest and any other relief the Court deems fair and just.

DATED this 17th day of August, 2018.

GREG SMITH AND ASSOCIATES

/s/ Gregory B. Smith
GREGORY B. SMITH
*Attorney for Plaintiff, Greg Gunn*
